---

(66 Misc. Rep. 484.)

TYPOTHETÆ OF THE CITY OF NEW YORK v. TYPOGRAPHICAL UNION NO. 6 et al.

(Supreme Court, Special Term, New York County. March, 1910.)

1. CONTEMPT (§ 44*)—CRIMINAL CONTEMPT—AUTHORITY TO PUNISH.

The authority to punish for a criminal contempt resides exclusively with the court offended.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 128–130; Dec. Dig. § 44.*]

2. CONTEMPT (§ 82*)—CRIMINAL CONTEMPT—PUNISHMENT—STAY.

Where defendants, officers of a labor union, so acted as to further the commission of acts of violence on the part of the members of the union, which acts it was the duty of such officers to endeavor to prevent under the mandates of the court, and the orders adjudging defendants guilty of criminal contempt were affirmed by the Appellate Division and the Court of Appeals on motion to direct the execution of its sentence of fine and imprisonment, the court may, on petition for clemency on the part of defendants, directed to be imprisoned and to pay certain fines, stay the issue of process for their imprisonment.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 275–284; Dec. Dig. § 82.*]

Application by the Typothetæ of the City of New York against Typographical Union No. 6, Patrick H. McCormick, and others. Motion to direct execution of an order adjudging defendants guilty of criminal contempt. Motion denied.

For opinion of the Appellate Division affirming this order, see 122 N. Y. Supp. 975.

Beatty & Burlingame, for plaintiffs.

Alfred J. Talley, for defendants.

BISCHOFF, J. The respondents before me have been adjudged guilty of a criminal contempt of court in violating an injunction order heretofore granted. As officers of the defendant Typographical Union No. 6 they so acted as to further the commission of acts of violence and intimidation upon the part of members of the union during the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

course of a labor dispute, which acts it was the duty of these officers to endeavor to prevent according to the court's mandate. After successive appeals to the Appellate Division and Court of Appeals, resulting in affirmance in each instance, this court is now asked to direct the execution of its sentence, fine, and imprisonment, and the survivors of the respondents directed to be imprisoned have petitioned the court for clemency in that respect. After mature deliberation, I have concluded that upon payment of the fines imposed, within 10 days, the issuance of process for the imprisonment of the petitioning respondents should be stayed. The court's acknowledgment is due to the relator and its counsel for their able and persistent defense of the court's dignity in that they prosecuted the contempt proceedings without hope of pecuniary reward or reimbursement for the expense necessarily incurred; and since, after diligent research, I have been unable to find any direct precedent for the course taken by me, I feel it a duty briefly to point to the authority of the court, and the reasons why I deem that course proper. Punishment does not proceed from any duty to appease public wrath or private vengeance. Ethically and judicially considered, its aim is correction and prevention. "The great end of punishment," says the Supreme Court of the United States in Hopt v. Utah, 110 U. S. 579, 4 Sup. Ct. 204, 28 L. Ed. 262, "is not the expiation or atonement of the offense committed, but the prevention of future offenses of the same kind," and the court is not without the attribute of mercy. Even in the case of a convicted felon it has been held that the court may, should wise consideration of the public weal so persuade it, stay the sentence imposed by positive law. People ex rel. Forsyth v. Court of Sessions, 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856; State v. Addy, 43 N. J. Law, 113, 39 Am. Rep. 547. Assuredly the court's authority cannot be wanting in the case of one found guilty of a lesser offense, one not inseparable from moral obliquity. Suspension of sentence is not a usurpation of the executive's pardoning power (People ex rel. Forsyth v. Court of Sessions, supra), and the court has inherent power to stay its judgments and orders when justice so demands. Granger v. Craig, 85 N. Y. 619. Whether the punishment prescribed be withheld by suspension of sentence after conviction merely or by staying the issuance of process after conviction and sentence is but a matter of the form of the means to attain the end—clemency. No public rights are invaded by withholding process for the respondents' imprisonment. A criminal contempt is a misdeameanor punishable by a year's imprisonment and a fine of $500 (Pen. Code, §§ 15, 143), and the respondents therefore remain amenable to the criminal law should their further prosecution be deemed advisable; but, as already shown, it is competent to the trial court to stay their sentence after conviction. The punitive authority of the court in cases of criminal contempt is not for the purposes of vindicating the criminal law (Middlebrook v. State, 43 Conn. 257, 21 Am. Rep. 650), but is a means to enable the court to enforce obedience to its commands; and the authority to punish for such a contempt resides exclusively with the court offended against. Watrous v. Kearney, 79 N. Y. 496; Conover v. Wood, 5 Abb. Prac. 84; Rapalje, Con-

tempt (Ed. 1884) § 13.   Imprisonment in the case of a criminal contempt is discretionary.   Code Civ. Proc. § 39.   If, therefore, reparation for the offense is made to the court, and it is appeased, no one can be heard to complain if it remits the punishment intended; and the affirmance of the order adjudging the respondents guilty of contempt on appeal implies no more than that the court which made the order was well within its province when so doing.   The relator is deprived of no right.   If it has suffered loss, or sustained injury through the respondents' acts, it has its action for damages.   Davis v. Zimmerman, 91 Hun, 489, 36 N. Y. Supp. 303; Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496.   I am not perturbed by any question of the wisdom of my direction for the stay of the respondents' imprisonment.   I made the order adjudging them guilty of contempt and imposing the punishment, but I am now impressed with the sincerity of the respondents' apologies to the court, of their assurances of regret for the unlawful occurrences and their participation therein, and of their promises in the future to defer to and to obey the court's directions, and by their example to persuade others to conduct themselves in every respect as the peace and good order of the community require.   I have not been unmindful of an impression prevalent among many persons that injunctions of the class to which the one violated by the respondents belonged constitute an unjust interference with the supposed rights of those enjoined, because of which the latter are sometimes persuaded to determine those rights for themselves, and are impatient of or unwilling to await the arbitrament of the courts, a course tending toward the destruction of social order which the law is designed to maintain.   I am willing to assume that the respondents had fallen into the error of that impression; and, if they have now been cured of it, and have come to a realization of what good citizenship and a due regard for the rights of others demand of them in that respect, the court's dignity is not lessened if it overlooks and forgives their past offense and spares them the humiliation of confinement in jail.   I believe that the court should be content with the respondents' apology and promises, and I feel assured that clemency, under the circumstances, is better in keeping with the court's dignity than would be the ruthless and inexorable enforcement of the respondents' disgrace.   Aside from the contempt of which the respondents were adjudged guilty, they have steadily behaved as good and useful members of the community, having supported themselves and those dependent upon them by honest toil, risen to places of dignity and honor among their fellow craftsmen, and contributing, so far as their station would permit, to the common weal. In view of their present attitude of respect for the court, therefore, I cannot see that any good purpose can be subserved by directing their imprisonment in the jail, thus causing them to feel humiliated and lowered in the esteem of their friends and neighbors.   Should future events prove my error I will feel comforted by the fact that it was at mercy's prompting.   Submit proposed order, with notice of settlement.

Motion denied.