CITY SCHOOL DISTRICT OF THE CITY OF SCHENECTADY, Respondent, v SCHENECTADY FEDERATION OF TEACHERS et al., Appellants.

Third Department, November 20, 1975

*Bernard F. Ashe (Ivor R. Moskowitz* and *Richard Casagrande* of counsel), for appellants.

*Simeo J. Gallo* for respondent.

KANE, J. In January of 1975, negotiations began between the appellant Schenectady Federation of Teachers (hereafter Federation), as exclusive bargaining agent for teachers employed by the respondent, and the respondent City School District of the City of Schenectady, New York, in an attempt to arrive at a contract for the 1975–76 school year. Numerous bargaining sessions were held and, after a declaration of impasse in March of that year, extended fact-finding hearings were conducted under the auspices of the Public Employment Relations Board. The report of a fact-finder was rejected by both parties on July 28, 1975 and, by late August, there were clear indications that a strike by the teachers might occur commencing on September 2, 1975, the opening day of the new school year. In anticipation thereof, respondent instituted an action for an injunction; obtained an order to show cause from the Supreme Court on August 29, 1975, which included a temporary restraining order and was returnable on September 5, 1975, why a preliminary injunction should not issue against such a strike; and caused said order, summons and complaint to be served personally upon the Federation and all but three

of the individual parties appellant herein, who are teachers and members of the Federation.

Nevertheless, a strike did commence on September 2, 1975. On the return date, and after a hearing, a preliminary injunction was issued by the Supreme Court which was mailed to all parties appellant. The strike continued. On September 10, 1975, upon respondent's further application, the court issued an order to show cause why these appellants should not be held in contempt of court. Hearings were held on September 16 and 17, 1975, while the strike still progressed, following which the Federation and the present individual appellants were adjudged guilty of criminal contempt of court (Judiciary Law, § 750). On September 23, 1975, punishment therefor was imposed: the Federation was fined the sum of $20,000 and the individual appellants were each fined $250 and sentenced to 10 days in the Schenectady County Jail (Judiciary Law, § 751). The effect of this order was stayed by this court pending the disposition of the ensuing appeals.

The constitutional arguments presented by appellants are without merit. The instigation or encouragement of a strike by a public employee or employee organization is specifically prohibited by law and injunctive relief is available, indeed mandated, when such a strike is threatened (Civil Service Law, § 210, subd 1; § 211). These provisions have consistently withstood repeated constitutional attacks and it would serve no useful purpose to answer at length each of appellants' contentions in this regard (*Rankin v Shanker,* 23 NY2d 111; cf. *Bloom v Illinois,* 391 US 194). Furthermore, the issuance of a temporary restraining order upon an ex parte application in this situation is definitely permissible and was clearly proper upon this record (*City of New York v De Lury,* 23 NY2d 175; *Central School Dist. No. 1 of Towns of Conklin, Binghamton, Kirkwood and Vestal v Susquehanna Val. Teachers' Assn.,* 43 AD2d 198, mot for lv to app dsmd 34 NY2d 944, cert den 419 US 1033; *Matter of State of New York v Fuller,* 31 AD2d 71).

Appellants also contend that the preliminary injunction should not have been granted upon the complaint and proof submitted to the court. We disagree and affirm that order. Insofar as the present appeal concerns the contempt adjudication, those issues have no relevance in any event for an order of a court must be obeyed, no matter how erroneous it may be, so long as the court is possessed of jurisdiction and its order is not void on its face (*Bachman v Harrington,* 184 NY 458;

*Ketchum v Edwards,* 153 NY 534; *Baski v Wallman,* 272 App Div 752; *Matter of Landau,* 230 App Div 308, app dsmd 255 NY 567).

Appellants raise numerous questions with respect to the service of the temporary restraining order and the preliminary injunction. Personal service of a certified copy of an order is not necessary to hold a party in contempt thereof if the party had actual knowledge of that order *(People ex rel. Stearns v Marr,* 181 NY 463; *Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers,* 42 AD2d 422; *Puro v Puro,* 39 AD2d 873, affd 33 NY2d 805). Personal service of the temporary restraining order, together with the summons and complaint, was achieved on all but three of these appellants. Service of the preliminary injunction on all parties was accomplished by mail. Since the predicate action had already been commenced, this constituted proper service (CPLR 5104; 2103, subd [b], par 2; 2103, subd [c]) as to most of the appellants and, in any case, they clearly possessed actual knowledge of both the restraining order and the preliminary injunction. Therefore, although such knowledge may be proven by circumstantial evidence *(Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers, supra),* resort to such proof was unnecessary in this matter except in the instance of the three individuals who were not personally served with the temporary restraining order, but were aware of the preliminary injunction. However, we need not decide whether knowledge of the restraining order was adequately established as to them in view of our decision applicable to all appellants on another issue.

Before a party may be punished for criminal contempt committed without the presence of the court, he must be given notice and an opportunity to be heard (Judiciary Law, § 751, subd 1; *Matter of Douglas v Adel,* 269 NY 144, 147). At the hearing on the contempt charges, appellants questioned whether they were being held to answer for their failure to obey the temporary restraining order, along with the preliminary injunction, inasmuch as the order to show cause initiating that proceeding did not mention the former order as a basis for the alleged contempt. They received no immediate answer, but proof of violation of the restraining order was adduced and they were subsequently adjudicated in contempt of both orders. While the sufficiency of the notice depends upon the particular circumstances of each case *(Matter of*

*Spector v Allen,* 281 NY 251, 256), we do not believe that it was adequate in the instant situation. In that case, as here, it may fairly be said that an amplification or a more exact definition of the charges would not have facilitated a defense on the merits *(id.,* at p 257). Nonetheless, the preparation of their defense might have been affected by the respondent's apparent oversight in failing to specifically refer to that restraining order and we must always insure that the rights of an accused receive adequate protection. Accordingly, though the issue is a close one, the criminal contempt adjudication of each appellant should be modified by reversing so much thereof as found them in willful disobedience of the temporary restraining order. While this moots the issue of proper service of that order upon the three individual appellants, it has no impact on the alleged violation of the preliminary injunction of which all were aware; it merely warrants further inquiry into the substance of the remaining case and necessitates review of the effect such modification should have upon their punishment.

The evidence during the contempt proceedings was clear and unmistakable: each appellant was engaged in an unlawful strike and each was in willful violation of a court's injunction to stop that strike. Special Term paid meticulous attention to every factual issue raised by appellants and satisfied itself beyond a reasonable doubt, as we are satisfied, of the complete and willful disobedience of a lawful court mandate. It quite properly found each appellant guilty of criminal contempt as a result. We are inclined to agree with appellants that the issuance of records of conviction for such contempt was in error for there is a distinction between one who is convicted of an offense and one who is found guilty of contempt under the Judiciary Law (cf. Penal Law, § 215.55; Correction Law, § 500-a, subds 3, 4; *People ex rel. Frank v McCann,* 227 App Div 57, affd 253 NY 221), but since the order appealed from contains no explicit direction imposing such a record, appellants must seek to have them expunged upon application to the trial court.

This brings us to consideration of the punishment imposed. Minor inaccuracies in the factual findings of the trial court have no significant bearing upon this subject and may be disregarded for each appellant plainly violated the same court order. That some individuals may have been more vociferous or blatant in their contemptuous behavior does not lessen for

others the consequences of their conduct, nor does it render arbitrary the identical punishments imposed therefor. Similarly, our modification of the contempt adjudication should not affect the penalties already pronounced. Without minimizing the importance of the restraining order, it was only violated from September 2, 1975 until September 5, 1975 when the preliminary injunction was issued, whereas that latter order was spurned by appellants for a far longer period and was persistently flouted even after they had been called to answer for their disobedience. Under these circumstances, there is little point in remanding this matter to the trial court since the record is already complete and we would ourselves impose the same punishment, if a reconsideration thereof were otherwise indicated, to avoid any further delay and to secure a final and prompt disposition of these proceedings.

When we examine the conduct of these teachers who represent a profession of high standing and regard in every community, it is difficult to conceive of any activity more destructive of the general welfare of a community than the wanton disregard of valid laws, declared constitutional by our highest courts, on the part of those who are entrusted with the development of moral and civic values in young and impressionable minds. Especially is this so when that action is then followed and compounded by a deliberately callous affront to judicial process. Wholly apart from the underlying illegality of the strike, court orders must be obeyed. Everyone owes an obligation to comply with such orders because the very society in which we live is founded and depends upon the mutual consent of every citizen to abide by legal process. Most appropriate here are the words of Mr. Justice FRANKFURTER in his concurring opinion in *United States v United Mine Workers of America* (330 US 258, 312) wherein he said:

"In our country law is not a body of technicalities in the keeping of specialists or in the service of any special interest. There can be no free society without law administered through an independent judiciary. If one man can be allowed to determine for himself what is law, every man can." Each issue raised by appellants, whether specifically discussed herein or not, has been carefully reviewed and we can find no reason to disturb the orders appealed from, except to the extent previously indicated.

The orders should be modified, on the law and the facts, by reversing so much thereof as adjudicated appellants guilty of

criminal contempt of a temporary restraining order, and, as so modified, affirmed, without costs.

HERLIHY, P. J., SWEENEY, KOREMAN and LARKIN, JJ., concur.

Orders modified, on the law and the facts, by reversing so much thereof as adjudicated appellants guilty of criminal contempt of a temporary restraining order, and, as so modified, affirmed, without costs.